1

2

3

4

5

6

7

8                     UNITED STATES DISTRICT COURT
                      WESTERN DISTRICT OF WASHINGTON
9

10   WESTGATE RESORTS, LTD,                    No.

11              Petitioner,                    **MOTION TO COMPEL
                                               COMPLIANCE WITH SUBPOENA
12   v.                                        OR, IN THE ALTERNATIVE, TO
                                               TRANSFER TO THE EASTERN
13   THE ABRAMS LAW FIRM,                      DISTRICT OF TENNESSEE**

14                                             Underlying Case: E.D. Tenn.
                                               3:18-cv-00512-DCLC-DCP
15              Respondent.
                                                ORAL ARGUMENT REQUESTED
16
                                                NOTE FOR MOTION: February 21, 2020
17

18

19

20

21

22

23

24

25

26

MOTION TO COMPEL   1

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*

1    Petitioner, Westgate Resorts, Ltd. ("Westgate" or "WRL"), pursuant to Rule 45 of the

2    Federal Rules of Civil Procedure, files this Motion to Compel Compliance with the Subpoena

3    ("Motion") issued to The Abrams Firm ("Respondent") in *George, et al. v. Westgate Resorts, Ltd.,*

4    *et al.,* No.: 3:18-cv-00512-DCLC-DCP ("Underlying Litigation").   The Respondent has

5    completely failed to respond or object to Petitioner's subpoena, which is narrow and solely seeks

6    discoverable information. As such, Petitioner moves for an order compelling production of the

7    responsive documents; or, in the alternative, to transfer this Motion to Compel to the District Court

8    for the Eastern District of Tennessee where the Underlying Litigation is pending.

9                                    **PRELIMINARY STATEMENT**

10    Westgate moves to enforce the subpoena it served on the law firm directing the Underlying

11    Litigation—The Abrams Firm. Ex. 1.  The future of the Underlying Litigation is inextricably tied

12    to The Abrams Firm and its principal John Abrams who, for more than a year, have delayed the

13    adjudication of Westgate's dispositive motions through constant changes in counsel, amendments,

14    and other unwarranted delays.  Recently, Plaintiffs' third counsel of record moved to withdraw

15    and exposed Abrams' improper conduct.  Abrams initiates mass joinder lawsuits—frivolous

16    lawsuits that join the dissimilar claims of timeshare owners into one proceeding—to extract fees

17    from timeshare owners lured by the prospect of a multimillion-dollar recovery and, to avoid

18    judicial oversight, he contracts Tennessee lawyers to appear as Counsel of Record.  These

19    attorneys, after learning that Abrams will limit their representation, have repeatedly withdrawn.

20    Despite controlling the litigation, Abrams remains in the shadows.  He has secured advanced fees

21    from the Plaintiffs, but will not appear and prosecute the case that he trumpets will result in "many

22    millions in damages."

23    It is now patently clear that no attorney will agree to the constraints Abrams' imposes on

24    the representation and the successive withdrawals will continue to impede the expedient resolution

25    of the claims.  Through his actions, Abrams has injected himself into the litigation and cannot now

26    claim that the documents corroborating his involvement are not relevant or proportional to the

MOTION TO COMPEL  1

**STOEL RIVES LLP**
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*

1   needs of the case.  The responsive documents will enable the Eastern District of Tennessee to rule

2   on the pending Motions to Withdraw and Stay, which threaten to further delay the adjudication of

3   Westgate's defenses.

4                                                **FACTS**

5         On October 24, 2018, Tennessee lawyer Jedidiah C. McKeehan ("McKeehan") filed a

6   Complaint on behalf of 40 timeshare owners that seek to rescind the contracts through which they

7   purchased units at timeshare resorts located in Florida, Nevada, and Tennessee.  Despite seeking

8   to terminate contracts involving resorts located in Florida and Nevada, the complaint's sole

9   Defendant was the developer of a Tennessee resort—WLR.  WRL moved to dismiss, sever, and

10  strike Plaintiffs' jury trial demand based on the waiver provisions found in the contracts.  Dkt. 6

11  (all references are to Underlying Litigation).

12        After WRL moved to dismiss, and less than 60 days after initiating the action, McKeehan

13  requested an extension of Plaintiffs' deadline to respond to WRL's motion as successor counsel,

14  Alan C. Lee ("Lee"), "need[ed] the opportunity familiarize himself with the case and the various

15  Plaintiffs" as the "motion was lengthy, complicated, and voluminous." Dkt. 9, ¶¶3-5.  Lee entered

16  an appearance, moved to remand, and filed an Amended Complaint naming seven additional

17  Defendants ("Additional Defendants").  Dkt. 12, 13-14.[1]  In light of the amendment, the court

18  extended WRL's deadline to respond to the Amended Complaint and the Motion to Remand "until

19  21 days after the other seven defendants have been served with process." Dkt. 18, at ¶ 7.

20        On March 15, 2019, Jessica Stewart of The Abrams Firm appeared as Plaintiffs' third

21  counsel of Record ("Counsel of Record").  Dkt. 24.  Nine days later—and less than three months

22  after appearing—Lee filed a notice of withdrawal as "Jessica Stewart will remain as counsel for

23  the Plaintiffs". Dkt. 26.  At the time Lee moved to withdraw, Plaintiffs had not attempted to serve

24

---

25  [1]The Additional Defendants are Central Florida Investments Inc., CFI Resorts Management Inc., Westgate Resorts Inc., Westgate Vacation Villas LLC, Westgate Palace LLC, Westgate Flamingo

26  Bay LLC, and Westgate Lakes LLC (collectively the "Additional Defendants".)

MOTION TO COMPEL - 2

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
Telephone 206.624.0900

1    the Additional Defendants.  Stewart did not perfect service by the 90-day deadline and—just as

2    the two previous counsel of record—she had resolved to withdraw just three months after entering

3    an initial appearance.  Dkt. 54.  Unlike her predecessors, however, Counsel of Record did not move

4    to withdraw as John Abrams had not yet secured successor counsel. Ex. 2,¶¶ 9-13.

5         During this time, the Underlying Litigation remained dormant for almost four months until

6    the court granted Plaintiffs' Motion to Remand believing it was unopposed. Dkt. 27.  WRL moved

7    for reconsideration arguing that it did not file an opposition as the court had extended the response

8    deadline until Plaintiffs served the Additional Defendants, which had not yet occurred.  Dkt. 30.

9    After the court granted the Motion for Reconsideration and vacated the Order of Remand, WLR

10   again moved to dismiss and sever.  Dkt. 32.  Plaintiffs did not respond to WLR's dispositive

11   motion.  On November 21, 2019—almost a year after filing the Amended Complaint—Plaintiffs

12   perfected service on the Additional Defendants who also moved to dismiss. Dkt. 41.

13        On December 30, 2020, Counsel of Record moved withdraw and stay the litigation as the

14   pending dispositive motions rendered Counsel of Record unable to further wait for Abrams to

15   secure successor counsel.  Dkt. 54, Ex. 2-3.  In her Motion to Withdraw and Stay, Counsel of

16   Record provided no reason for her decision to withdraw other than "professional considerations"

17   and requested that the Court stay the proceedings until Plaintiffs' secured new counsel. Dkt. 54.

18   Westgate opposed the Motion to Withdraw because it threatened hold this case in stasis while

19   Abrams identified a successor counsel willing to represent more than 40 Plaintiffs that live

20   throughout the United States and even abroad in a case of questionable merits in which deadlines

21   to respond to dispositive Motions had passed and others loomed near.  Dkt. 57.  The evidence also

22   suggested that Abrams had secured advanced fees from the financially distressed Plaintiffs who

23   would lack the means to retain a fourth attorney.  *Id.* citing Dkt. 31 (moving for substitute service

24   on the Additional Defendants arguing that Plaintiffs are "low income").

25        Westgate also objected to the withdrawal because there was sufficient evidence of Abrams'

26   involvement and lack of commitment to prosecuting Plaintiffs' claims.  *Id.*  Indeed, in the firm's

MOTION TO COMPEL - 3

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
Telephone 206.624.0900

website, Abrams asserts he has initiated more than 7 "multiparty" lawsuits against timeshare resorts all of which have been dismissed or subject to unnecessary delays.  Ex. 4.  *See Bailey et al v. Wyndham Vacation Ownership, Inc. et al.,* Case No. 19-cv-05325-VC, (N.D. Cal. Jan. 21, 2010) (renewing motion to dismiss for lack of subject matter jurisdiction and failure to state a claim after plaintiff filed amended complaint upon court's granting previous motion to dismiss on the same grounds); *Banks et al v. Hilton Grand Vacations Company, LLC*, Case No. 1:19-cv-00051 (D. Col. Feb. 6, 2019)(entering voluntary dismissal after the court ordered the plaintiffs to show cause for why the complaint should not be dismissed due to the court's lack of subject-matter jurisdiction); *Williams et al v. Holiday Inn Club Vacations et al.,* Case No. 2:19-cv-00057-cr (D. Vt. Nov. 12, 2019)  (taking under advisement motion to dismiss after Plaintiffs did not appear at hearing that was three months earlier).

Abrams also encourages owners to pay a fixed fee to "join" his "multiparty" actions.  Ex. 4.  The evidence suggests that The Abrams Firm is selling access to frivolous "mass joinder" lawsuits—a practice that emerged in the wake of the foreclosure crisis and lead to the prosecution and disbarment of unscrupulous attorneys.  *See California v. The Law Offices of Kramer & Kaslow*, Complaint for Civil Penalties, Permanent Injunction, and Other Equitable Relief, No. LC094571, 2011 WL 3621874 (Cal. Aug. 15, 2011)(accusing law firm of "prey[ing] on desperate consumer homeowners facing foreclosure and the loss of their homes by selling participation in so-called "mass joinder" lawsuits against their mortgage lenders"); *Fed. Trade Comm'n v. Kutzner*, No. SACV1600999BROAFMX, 2017 WL 4685286, at *2 (C.D. Cal. Sept. 5, 2017)(granting summary judgment in case brought by the FTC against law firm that convinced consumers to join "mass joinder case against their lender" by promising a "significant recovery" even though the lawyers had "never won a mass joinder case, do not have the experience or resources to litigate them, and never sue on behalf of many paying consumers"); *Office of the Attorney Gen. v. Berger Law Grp., P.A.*, No. 8:14-CV-1825-T-30MAP, 2015 WL 5922933, at *3 (M.D. Fla. Oct. 9, 2015)("Defaulting Defendants also misrepresented their staffing and the likelihood that their mass-

MOTION TO COMPEL - 4

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
Telephone 206.624.0900

1 joinder cases would result in the consumer receiving a loan modification with favorable terms.");

2 *Consumer Fin. Prot. Bureau v. Marc Hoffman, et al*., No. 14-80931-CIV, 2015 WL 13708155, at

3 *5 (S.D. Fla. May 28, 2015)(ordering permanent dissolution of law firms that employed deceptive

4 tactics to dupe consumers into joining mass litigation and then pursued those claims "without

5 significant regard for litigation theories, litigation strategy, or even a sound legal basis upon which

6 the litigation would be brought"); *In re Petition for Disciplinary Revocation of Hoffman*, 168 So.

7 3d 225 (Fla. 2015)(suspending lawyer who was prosecuted by the Florida Attorney General and

8 Federal Consumer Financial Protection Bureau for deceiving consumers into joining frivolous

9 mass joinder lawsuits against their mortgage lender).

10  On January 14, 20120, Counsel of Record filed a Reply in Support of the Motion to

11 Withdraw in which she disclaimed knowledge of the veracity of the allegations in the complaint,

12 but denied being complicit in bringing a frivolous mass joinder lawsuit. Dkt. 60-1, Ex. 2. In her

13 supporting affidavit, Counsel recounted how John Abrams contacted her and claimed to be a

14 "national litigator for consumers defrauded by the timeshare industry." Ex. 2, ¶ 2. Cognizant of

15 her limited experience prosecuting complex federal lawsuits, Counsel of Record relied on Abrams'

16 promised support and undertook the representation after signing a contract to become an

17 "'Associate Attorney' of The Abrams Firm." *Id.* at ¶¶ 4, 7.

18  In due course, she grew suspicious of Abrams whom she believed was "withholding

19 information and attempting to limit [her] access to the clients". *Id.* at ¶ 8. Afterwards, she

20 repeatedly sought to terminate her relationship with The Abrams Firm and Abrams became non-

21 responsive to her requests for the appointment of a successor counsel. *Id.* The resulting "immense"

22 stress caused Counsel of Record "to develop an anxiety disorder, which sometimes manifests in

23 the firm of a full symptom panic attack." Ex. 3, at ¶ 2. Her declining health caused Counsel of

24 Record to move to withdraw and stay, while Abrams continues to promise successor counsel will

25 appear, that has yet to occur.

26

MOTION TO COMPEL - 5

105225864.1 0070368-00001

1    On January 15, 2020, Westgate served Plaintiffs with their Notice of Intent to Serve a

2    Subpoena *Duces Tecum* on The Abrams Firm.  Ex. 1.  The subpoena requests the retainers executed

3    by the Plaintiffs as well as The Abrams Firm's contracts with the Tennessee lawyers that had

4    served as Counsel of Record in this lawsuit, which are relevant in light of the Local Rule requiring

5    that Counsel of Record be "personally retained by the litigant or client, or associated by counsel

6    personally retained by the litigant or client."  E.D. Tenn. L.R. 83.4(a).  The subpoena also seeks

7    documents reflecting the efforts to secure successor counsel and the status of similar lawsuits

8    Abrams has initiated, all which will reflect The Abrams Firm's practice of instituting frivolous

9    lawsuits and then delaying the Court's adjudication of the claims.  On January 16, 2020, Westgate

10   personally served John Abrams, the registered agent of The Abrams Firm, with the subpoena *duces*

11   *tecum*. Ex. 5. The Abrams Firm did not respond to the subpoena by the February 3, 2020 deadline

12   nor objected to any of the requests.

13                                    **MEMORANDUM OF LAW**

14           ***A.***     ***Applicable Law***

15    Rule 45 governs discovery from nonparties by subpoena.  Third-party subpoenas are

16   subject to the general provisions governing discovery articulated in Rule 26.  Fed. R. Civ. P. 45

17   Advisory Comm.'s Notes (1970) ("[T]he scope of a discovery through a subpoena is the same as

18   that applicable to Rule 34 and other discovery rules.").  As such, subpoenas may request production

19   of any nonprivileged matter that is relevant to any party's claims or defense and proportional to

20   the needs of the case.  Fed. R. Civ. P. 26 (b)(1).  The proportionality of a request hinges on, *inter*

21   *alia*, the burden imposed by the proposed discovery and its importance in resolving the issues. *Id.*

22           The party issuing the subpoena must "take reasonable steps to avoid imposing undue

23   burden or expense on a person subject to the subpoena."  Fed. R. Civ. P. 45(d)(1).  In assessing

24   the burden imposed on nonparties, courts consider the requesting party's need for the documents,

25   the breadth of the document request, and the time period covered by the request. *Russell v. Zoellin*,

26   No. C18-0827-JCC, 2019 WL 1989654, at *1 (W.D. Wash. May 6, 2019).  To preserve its

MOTION TO COMPEL - 6

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*

1    objections, the respondent must object to the subpoena within 14 days of service or before the time

2    of compliance.  Fed. R. Civ. P. 45(d)(2)(B).  "A party who does not timely object to a Rule 45

3    subpoena waives any objection to the subpoena."  *Uzzell v. Teletech Holdings, Inc*., No. C07-0232

4    MJP, 2007 WL 4358315, at *1 (W.D. Wash. Dec. 7, 2007).

5          Because they are subject to Rule 26's scope of discovery, subpoenas cannot request

6    materials protected by the attorney-client privilege and work product doctrine.  Fed. R. Civ. P. 26

7    (b)(1).  The attorney-client privilege protects the communications in which the "attorney's advice

8    or assistance is sought and received on legal matters.  *Aecon Bldgs., Inc. v. Zurich N. Am*., 253

9    F.R.D. 655, 660 (W.D. Wash. 2008).  The privilege has limited applicability as it simply aims "to

10   encourage clients to completely disclose information to their attorneys to allow for the rendition

11   of competent legal advice and "thereby promote broader public interests in the observance of law

12   and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).  While the

13   attorney-client privilege protects communications generated by clients seeking legal advice, the

14   "work-product doctrine shelters the mental processes of attorneys". *MKB Constructors v. Am.*

15   *Zurich Ins. Co*., No. C13-0611JLR, 2014 WL 2526901, at *3 (W.D. Wash. May 27, 2014).  The

16   doctrine does not protect all materials an attorney generates during the course of a representation

17   as it shields only to those materials prepared in anticipation of litigation.  *Id.*  The party invoking

18   the protection of the work product doctrine and attorney-client privilege bears the burden of proof.

19   *Hanson,* 2013 WL 5674997 at *3.

20   ***B. The Court should Compel The Abrams Firm to Respond to the Subpoena.***

21         The Abrams Firm must be compelled to produce the non-privileged documents that will

22   confirm John Abrams' representation of the 40 Plaintiffs that have joined in the frivolous "mass

23   joinder" lawsuit pending against Westgate in the District Court for the Eastern District of

24   Tennessee.  The merits of the Underlying Litigation and the future of this entire lawsuit are

25   inextricably tied to Abrams.  In the Underlying Litigation, Abrams joined the claim of 40 Plaintiffs

26   in hopes of invalidating 20 different contracts involving timeshare resorts located in Nevada,

MOTION TO COMPEL - 7

1    Florida, and Tennessee.  Although Westgate first moved to dismiss and sever in 2018, the

2    resolution of the threshold jurisdictional issues have been delayed through amendments, failure to

3    timely perfect service of process on Additional Defendants, and repeated changes in counsel.  DE

4    9, 12, 13, 26.

5           Most recently, Plaintiffs' third counsel of record moved to withdraw and stay the litigation

6    exposing The Abrams' Firm involvement in this case.  In support of her Motion to Withdraw and

7    Stay, Counsel of Record filed a series of unsettling affidavits that identify Abrams as the architect

8    of this lawsuit and describe how he exploited the naiveté of a recently admitted member of the bar

9    to conceal his participation in the Underlying Litigation.  Exs. 2-3. According to the affidavits,

10   Abrams contacted Counsel of Record, who since her admission to the Tennessee bar had been

11   providing pro-bono legal services to the elderly, and persuaded her to appear on behalf of the

12   Plaintiffs by pledging his full support. Ex. 2, ¶¶1-4.  Abrams did not deliver the promised support

13   and, despite controlling the litigation, he has never appeared in the Underlying Proceeding.

14          Through his surreptitious involvement, Abrams continues to hold Plaintiffs and Counsel

15   of Record hostage.  Abrams will not allow Counsel of Record to communicate directly with the

16   Plaintiffs and advise them of the merits or weaknesses of their case. Ex. 2, ¶¶8-13.  At the same

17   time, he will obstruct Counsel of Record's efforts to investigate the merits of the claims and also

18   prevent them from withdrawing by delaying in securing successor counsel.  *Id.*  The arrangement

19   will be untenable to any attorney and will continue to cause appearances and withdrawals that will

20   impede the progress of this action.  Not only will Abram's control prove an obstacle to the

21   appearance of successor counsel, but he secured advanced fees which may render Plaintiffs unable

22   to pay for yet another attorney.  Having secured an advance fee from each of the Plaintiffs, The

23   Abrams Firm should continue in the case  unless it proves it has refunded all unearned fee. *Bd. Of*

24   *Prof'l Responsibility v. Reguli*, 489 S.W.3d 408, 422 (Tenn. 2015)(noting that a "fixed" or "flat"

25   legal fee **"**is intended to compensate the lawyer for ***all*** work to be done on a  matter.")(emphasis

26   added).

MOTION TO COMPEL - 8

105225864.1 0070368-00001

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone* 206.624.0900

1    Under these circumstances, it would be disingenuous for Abrams to cry hardship in

2    response to the subpoena Westgate issued in preparation for the upcoming hearing on the Motion

3    to Withdraw. The subpoena seeks Abrams' retainer agreements with the Plaintiffs, evidence of

4    counsel associated with the firm that could continue to represent the Plaintiffs, and efforts to secure

5    successor counsel.   Ex. 1.   Respondent has neither objected to the subpoena nor produced

6    responsive records.  Because successor counsel has yet to enter an appearance, Respondent must

7    be required to produce the documents that will prove John Abrams' representation of the Plaintiffs

8    so that the Court may require his appearance in the case and avoid further delays.

9    The subpoena seeks documents relevant and proportional to the needs of the case as

10   Abrams willingly injected himself into this litigation by orchestrating this frivolous "mass joinder"

11   lawsuit and later concealing his participation in violation of the Eastern District of Tennessee's

12   rules governing multijurisdictional practice of law and *pro hac vice* admissions.  E.D. Tenn. L.R.

13   83.5(a)(1)("It shall be required to practice generally in this Court that an applicant be currently

14   admitted to practice in the highest court of a state, territory, or the District of Columbia, and that

15   the applicant appear to the Court to be of good moral and professional character . . . .");  E.D. Tenn.

16   L.R. 83.5(b)(1)(permitting attorneys admitted to another district court to "practice specially in this

17   district *pro hac vice* in a particular case" "upon motion"); T.C.A. § 23-3-101 (3) ("practice of law

18   means the appearance as an advocate in a representative capacity or the drawing of papers,

19   pleadings or documents or the performance of any act in such capacity in connection with

20   proceedings pending or prospective before any court"); T.C.A. § 23-3-103 (a) ("No person shall

21   engage in the practice of law or do law business, or both, as defined in § 23-3-101, unless the

22   person has been duly licensed").

23   Abrams must be required to produce the responsive documents as they go to the heart of

24   the delays and misrepresentations that—for more than a year—have stalled the progress of this

25   case.  Counsel of Records' affidavits, together with the development of this and the similar

26   "multiparty" lawsuits instituted by The Abrams Firm, prove that Abrams is not committed to

MOTION TO COMPEL - 9

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
Telephone 206.624.0900

1    prosecuting the lawsuits he advertises on the firm's website.  Demonstrably, Abrams goal is to

2    delay the resolution of the claims so he may continue to peddle these "multiparty lawsuits" as a

3    "cost-effective" tool of justice.  Ex. 4.  As a member of the bar, Abrams is subject to a higher

4    standard.  He must appear on behalf of the Plaintiffs that paid thousands of dollars in fees for his

5    representation.  Unless forced to appear in this case, Abrams will continue to practice law in the

6    district without submitting the Court's oversight and delay the progress of this action through

7    additional amendments, changes in counsel, and unnecessary stays.

8    **C.  In the alternative, the Court may transfer this Motion to the United States District Court**
9    **for the Eastern District of Tennessee for resolution.**

10   Pursuant to Rule 45(f), this Court may transfer this subpoena-related Motion to the issuing

11   court upon finding "exceptional circumstances."  Fed. R. Civ. P. 45 (f).  While the main concern

12   is protecting the local nonparties from further burdens, "transfer may be warranted in order to

13   avoid disrupting the issuing court's management of the underlying litigation, as when the court

14   has already rule on issues presented by the motion or the same issues are likely to arise in discovery

15   in many districts."  *Id.* advisory committee's notes.  Whether the exceptional circumstances that

16   warrant transfer exist depends on the "complexity, procedural posture, duration of pendency, and

17   the nature of the issues before, or already resolved by, the issuing court in the underlying

18   litigation."  *In re Hume*, No. C15-1045RFBPAL, 2017 WL 4224421, at *2 (W.D. Wash. Sept. 22,

19   2017)(transferring subpoena-related motion served on nonparty who had "already injected

20   himself" in the underlying litigation).

21   To warrant transfer, the exceptional circumstances must outweigh the interests of the

22   nonparty served with the subpoena "in obtaining local resolution of the motion." *Google, Inc. v.*

23   *Digital Citizens All.*, MC 15-00707 JEB/DAR, 2015 WL 4930979, at *4 (D.D.C. July 31,

24   2015)(noting that the use of telecommunications is an adequate means to avoid undue burden on

25   the nonparties). District courts are encouraged to "permit telecommunications methods to

26   minimize the burden the transfer imposes on nonparties." Rule 45, advisory committee notes; *see*

MOTION TO COMPEL - 10

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*

1   *e.g., In re S&D Powersports*, 5:17-MC-00099, 2017 WL 3670972, at *2 (W.D. Ark. Aug. 25,

2   2017) (transferring subpoena-related motion because the documents sought related to an expert's

3   opinion that was subject to a Daubert motion filed in the underlying litigation and the burden on

4   the nonparty could be addressed through the use of technology).

5          Here, exceptional circumstances warrant transferring this Motion to District Court for the

6   Eastern District of Tennessee. First, the responsive documents will impact the Court's ruling on

7   the pending Motion to Withdraw.  Second, Abrams participation in the Underlying Litigation

8   should be examined under the Local Rules for the Eastern District of Tennessee.  The rules require

9   that an attorney licensed in another jurisdiction move for admission *pro hac vice* before practicing

10  law in the District and, failure to comply with the local rules, provides ground for discipline.  Third,

11  the court is intimately familiar with the Underlying Litigation may more expediently adjudicate

12  the issues in this Motion.

13                                        **<u>CONCLUSION</u>**

14         The Abrams Firm must produce the documents responsive to the subpoena. Not only did

15  the Respondent forfeit the right to challenge the subpoena by failing to serve a timely objection,

16  but any such objection would be untenable.  The future of the Underlying Litigation is unavoidably

17  tied to The Abrams Firm.  There is sufficient evidence that The Abrams Firm secured a fixed fee

18  from the financially distressed Plaintiffs.  Not only will they have limited means to secure

19  successor counsel, but they will not likely find an attorney—outside The Abrams Firm—who will

20  agree to litigate in one lawsuit the fraud-based claims pertaining to the 20 different contracts

21  negotiated between different individuals, at different times, and for the purchase of different assets.

22  These facts evidence, not only that the Underlying Action is frivolous, but also the obstacles to

23  securing successor counsel.  John Abrams—the architect of this lawsuit—should be required to

24  appear and litigate the claims without further delay.  Yet, unless he is forced to produce the

25  documents that confirm his involvement, Abrams will continue to hide behind counsel of record

26

MOTION TO COMPEL - 11

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*

1   that will repeatedly move to withdraw. The Court should not allow Abrams' egregious

2   exploitation of the judicial system.

3         Respectfully submitted this 5th day of February, 2020.

4

5

6                                         STOEL RIVES LLP

7                                         /s. Vanessa Power
                                          Vanessa Soriano Power, WSBA No. 30777
8                                         vanessa.power@stoel.com

9                                         STOEL RIVES LLP
                                          600 University Street, Suite 3600
10                                        Seattle, WA  98101
                                          Telephone:  206.624.0900
11                                        Facsimile:  206.386.7500

12                                        GREESPOON MARDER, LLP
                                          Richard Epstein
13                                        Michelle E. Durieux
                                          200 East Broward Boulevard, Suite 1800
14                                        Fort Lauderdale, FL  33301
                                          Telephone: 954-491-1120
15                                        Email: michelle.durieux@gmlaw.com

16                                        *Attorneys for Westgate Resorts, LTD., L.P.*

17

18

19

20

21

22

23

24

25

26

MOTION TO COMPEL - 12

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*